# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| vs. | * | CR 209-014 |
| | * | |
| CHARLENE RIVERA, | * | |
| | * | |
| Defendant | * | |

## ORDER

On August 12, 2009, after a three-day trial, a jury convicted the Defendant, Charlene Rivera, of fifty counts of bank fraud, in violation of 18 U.S.C. § 1344(2). On August 18, 2009, within the seven-day period provided for by Rule 29(c)(1) of the Federal Rules of Criminal Procedure, Rivera filed a Motion for Judgment of Acquittal. (Dkt. No. 69.) For the reasons set forth below, Defendant's Motion is **DENIED**.

## BACKGROUND

On April 9, 2009, a federal grand jury returned an indictment against the Defendant, Charlene Rivera, charging her with fifty-five counts of bank fraud, in violation of 18 U.S.C. § 1344(2). The indictment charged that, between April 2005 and December 2006, Ms. Rivera fraudulently obtained approximately $95,000.00 by writing checks on the business account of her employer, Steve Woolsey, without Mr. Woolsey's permission. Each of the fifty-five counts

1

listed in the indictment represents a separate check that the Government claimed was either fraudulently cashed or deposited by Rivera without Mr. Woolsey's permission.

Rivera pled not guilty to all fifty-five counts, and a jury trial was conducted. The trial began on August 10, 2009, and concluded on August 12, 2009. Before it rested, the Government voluntarily dismissed three of the counts listed in the indictment. The evidence at trial, construed in the light most favorable to the jury's verdict, showed that Rivera abused the signature authority with which Mr. Woolsey entrusted her and fraudulently forged checks.

Mr. Woolsey owned a real-estate firm in St. Marys, Georgia, and employed Rivera as an office assistant. Rivera's duties included keeping Mr. Woolsey's business records and handling his business-related finances. Mr. Woolsey testified that he orally granted Rivera permission to sign his name to checks written on his business accounts only for business expenses, her weekly salary, authorized bonuses, and occasionally as reimbursement for legitimate business expenses that she paid. No signature card was presented to the Coastal Bank of Georgia authorizing Ms. Rivera to sign her name on Mr. Woolsey's checks. Mr. Woolsey did file a statement with the bank giving Rivera certain authority to access his accounts and transfer funds between accounts, but that document did not authorize her to sign his name to checks.

Rivera did not simply write checks to cover business expenses and her salary, however. The evidence at trial clearly shows that she also wrote unauthorized checks made payable to herself and to cash, and kept the funds for herself. She covered up her fraudulent scheme by recording the checks in Mr. Woolsey's business records as legitimate business expenses. Mr. Woolsey eventually figured out what Rivera was doing and fired her, but not before Rivera had stolen over $90,000.

After hearing testimony and receiving evidence, the jury found Rivera guilty of fifty of the remaining fifty-two counts. Rivera moved for a judgment of acquittal at the close of the Government's case-in-chief, and timely renewed her Motion after the jury found her guilty. Rivera argues in her Motion that, for a conviction to lie under the federal bank fraud statute, the Government must prove that she intended to defraud a FDIC insured financial institution, or that her scheme placed a FDIC insured institution at a potential risk of loss. Rivera argues that a financial institution was not placed at a risk of loss because, under Georgia law, Mr. Woolsey does not have a cause of action against any of the banks involved, given that he let Rivera write some checks. Rivera cites United States v. Thomas, 315 F.3d 190 (3d Cir. 2002), in support of her argument. However, because the text of the bank fraud statute and Eleventh Circuit precedent do not require a federally insured institution to be the target of the fraud or at a risk of loss, Rivera's Motion is **DENIED**.

## **LEGAL STANDARD**

Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, a district court must enter a judgment of acquittal if "the evidence is insufficient to sustain a conviction." When evaluating Rule 29 claims for judgment of acquittal, the Court must view the evidence in the light most favorable to the Government, making all reasonable inferences and credibility determinations in favor of the jury's verdict. United States v. Ward, 197 F.3d 1076, 1079 (11th Cir. 1999). The Court need only determine "whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt" based on the evidence. United States v. Sellers, 871 F.2d 1019, 1021 (11th Cir. 1989). The Court does not have to rule out all reasonable hypotheses other than guilt. Id.

## DISCUSSION

Rivera's Motion requires the Court to interpret 18 U.S.C. § 1344, the federal bank fraud statute. "As with any question of statutory interpretation, we begin by examining the text of the statute to determine whether its meaning is clear." Harry v. Marchant, 291 F.3d 767, 770 (11th Cir. 2002) (en banc). When the statute's text is clear, the Court "presume[s] that Congress said what it meant and meant what it said." United States v. Steele, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc). When the plain meaning of the text is neither absurd nor ambiguous, resort to legislative history is both unnecessary and improper. See Rine v. Imagitas, Inc., 2009 WL 4893688, *5 -- F.3d --,-- (11th Cir. 2009).

The federal bank fraud statute provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice –
>
> (1) to defraud a financial institution; or
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $ 1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344 (emphasis added). Section 1344(1) criminalizes a scheme or artifice "to defraud a financial institution." If that were the entirety of the statute, Rivera would be correct that a bank must be the intended victim in order for a scheme or artifice to constitute bank fraud. However, the statute has a second subsection, which contains an alternative way in which bank fraud can be committed. Section 1344(2) criminalizes a scheme or artifice "to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or

4

promises." It was under that second subsection that Mrs. Rivera was indicted, tried, and convicted.

The two subsections of the statute are separated by the disjunctive word "or," not the conjunctive word "and." Ordinarily, when a "statute is written in the disjunctive [it] should be interpreted as establishing two alternative means of committing a violation." United States v. Harmas, 974 F.2d 1262, 1266 (11th Cir. 1992). Rivera, however, argues that the statute should be read in the conjunctive, and that the Government must prove she intended to defraud a financial institution, under subsections one *and* two. She also appears to argue that the Government must prove that her scheme exposed a financial institution to a potential risk of loss. The Government responds that proof of Rivera's intent to defraud someone, in this case Mr. Woolsey, is enough under section 1344(2).

The text of section 1344(2) supports the Government's position – and the jury's verdict. The Government produced evidence that enabled the jury to conclude that Rivera knowingly executed a scheme to obtain money in the custody of a federally insured bank by means of false representations of material fact: Rivera received funds in the custody of FDIC insured banks by falsely representing that certain checks were authorized and signed by her employer. The Government also presented evidence at trial showing that Rivera recorded the checks in her employer's records in a way that hid the fact that she was really writing the checks to herself – or making them out to cash and keeping the funds for herself. That evidence – that she wrote unauthorized checks for her own benefit and falsified her employer's records in an attempt to cover up the scheme – supports a jury finding that Rivera intended to defraud her employer. That conduct is certainly reprehensible. However, not all morally-reprehensible conduct is

5

punishable as a federal crime. The Court must therefore decide whether Rivera committed bank fraud or just a crime against her employer, more properly governed by state law.

The plain language of section 1344(2) does not require a specific intent to commit fraud on a bank or that the scheme place a bank at risk of potential civil liability. There is, however, a circuit split as to whether those are required elements. In United States v. Thomas, the Third Circuit refused to read the bank fraud statute as setting forth two alternative ways of committing bank fraud. 315 F.3d 190, 196-97 (3d Cir. 2002). Rather, it read the statute in the conjunctive as setting forth a single offense, and held that intent to defraud a bank is a necessary element in all bank fraud prosecutions, and that the defendant must also expose a bank to a risk of loss. Id. at 199-201. The court based its decision on excerpts from the legislative history indicating that Congress enacted the bank fraud statute to protect banks from being "victimized." Id. at 196-202. Other circuits follow similar approaches based on similar readings of the legislative history or statutory purpose. See e.g., United States v. Laljie, 184 F.3d 180, 189-91 (2d Cir. 1999); United States v. Davis, 989 F.2d 244, 246-47 (7th Cir. 1993). Some circuits read the statute in the disjunctive, but require that the defendant expose a financial institution to a potential risk of civil liability for a conviction to lie under the second subsection. See United States v. Sprick, 233 F.3d 845, 852-53 (5th Cir. 2000).

Siding with those circuits and granting Rivera's Motion would require this Court to alter the statutory text in one of two ways. Rivera's argument that the Government must prove that she intended to defraud a financial institution would require the Court to change the word "or" separating clauses (1) and (2) to the word "and." Rivera's argument that a financial institution must face a potential risk of loss would require the Court to add the phrase "for which the institution bears the risk of loss" after the phrase "or under the custody or control of, a financial

6

institution." As explained below, this Court declines to circumvent the role of the legislative branch and rewrite the statute.

Not all Circuits require a specific intent to defraud a bank or that a bank face a potential risk of loss or civil liability. The Sixth Circuit, for example, does not require either. In the Sixth Circuit, "[i]t is sufficient if the defendant in the course of committing fraud on *someone* causes a federally insured bank to transfer funds under its possession and control." United States v. Everett, 270 F.3d 986, 991 (6th Cir. 2001) (emphasis as in original). Thus, the Sixth Circuit only requires the defendant have the specific intent to defraud someone – intent to defraud or harm a financial institution is not required. Id.[1] The First Circuit requires an intent to deceive a financial institution for a conviction to lie under either subsection, but does not require "intent to harm" a financial institution. See United States v. Kenrick, 221 F.3d 19, 27-29 (1st Cir. 2000) (en banc).

The Eleventh Circuit has not decided whether intent to defraud a bank is a necessary element of § 1344(2). It does, however, read the statute as creating two distinct ways in which bank fraud can be committed:

> [T]o convict under § 1344(1), the government must prove (1) that the defendant intentionally participated in a scheme or artifice to defraud another of money or property; and (2) that the intended victim of the scheme or artifice was a federally-insured financial institution. To convict under § 1344(2), the government must prove (1) that a scheme existed to obtain moneys, funds, or credit in the custody of a federally-insured bank by fraud; (2) that the defendant participated in the scheme by means of material false pretenses, representations or promises; and (3) that the defendant acted knowingly.

---

[1] In so holding, the Sixth Circuit noted that "causing a bank to transfer funds pursuant to a fraudulent scheme reduces the funds the bank has available for its loans and other activities and almost inevitably causes it some loss." Id.

7

United States v. McCarrick, 294 F.3d 1286, 1290 (11th Cir. 2002) (internal citations omitted). That reading of the statute would seem to indicate that intent to defraud a bank is not required under subsection two. However, the Eleventh Circuit also holds that "[t]o satisfy either of these two subsections, the Government must prove specific intent to defraud." United States v. Goldsmith, 109 F.3d 714, 716 (11th Cir. 1997). The Goldsmith court distinguished the two subsections on the grounds that "[u]nder subsection [one] the Government is not required to establish misrepresentation on the part of the defendant." Id. Neither Goldsmith nor its progeny, however, specify whom or what the defendant must intend to defraud for section 1344(2) purposes. Id.; United States v. Cochrane, 274 F. App'x 746, 747-48 (11th Cir. 2008) (unpublished). Nor does the case cited by the Goldsmith court in support of the intent to defraud requirement, United States v. Medeles, 916 F.2d 195 (5th Cir. 1990), shed any light on the question. In fact, Medeles does not say that intent to defraud is a necessary element of subsection two, and has some language indicating that it is only a requirement of subsection one. See 916 F.2d at 198-200. While not entitled to any precedential weight, the Eleventh Circuit Pattern Jury Instructions, which were given at Rivera's trial, state that the defendant must have a specific intent to defraud, but do not require a specific intent to defraud a financial institution. See Eleventh Circuit Pattern Jury Charge No. 52.

Nor has the Eleventh Circuit decided whether intent to harm or placing the bank at a risk of loss is required for § 1344(2).[2] Importantly, however, the Eleventh Circuit has held that a bank is not the only possible victim in a federal bank-fraud case. See United States v. Linville, 228 F.3d 1330, 1331-32 (11th Cir. 2000). Specifically, the court held – in a case factually

---

[2] The Eleventh Circuit has indicated in *dicta* that exposing the bank to a risk of loss is not required under § 1344(1), but seemed to leave open the possibility that it is required under § 1344(2): "Our review of the cases reveals that courts apply the risk of loss analysis in determining whether a scheme primarily directed at a non-bank third party can still give rise to bank fraud. Therefore, we believe that 'risk of loss' is merely one way of establishing intent to defraud in bank fraud cases." United States v. De La Mata, 266 F.3d 1275,1298 (11th Cir. 2001) (internal citations omitted).

8

identical to this one – that the defendant's employer could also be a victim for purposes of the U.S.S.G. § 3B1.3 sentencing enhancement for abuse of a position of trust. Id. at 1330-32. In so holding, the court noted that "[m]oney under the custody or control of a bank is not necessarily money whose loss the bank is responsible for, as this case amply illustrates." Id. at 1332.

Linville indicates that exposing the bank to a risk of civil liability is not required. It was cited approvingly by the Eleventh Circuit in a case where the defendant argued that his conviction should be overturned because the government failed to prove that a financial institution was the "actual or intended victim" of his scheme. United States v. Singer, 152 F. App'x 869, 875 (11th Cir. 2005) (unpublished). However, the Singer court also cited with approval Second and Fourth Circuit cases that do require that the defendant expose the bank to a potential risk of loss. Id. at 875 n.3. The court ultimately held that the defendant did, in fact, expose a financial institution to a risk of loss by negotiating forged checks, and cited Second and Fourth Circuit cases in support of that conclusion. Id. at 875-76.

After reviewing section 1344's text, the Eleventh Circuit case law, case law from other circuits, and the legislative history, the Court concludes that intent to defraud a financial institution is not required to convict a defendant under section 1344(2). The statute's use of the word "or" requires the Court to read it as establishing alternative ways of committing bank fraud. See Harmas, 974 F.2d at 1266. That reading of the statute is also consistent with the Eleventh Circuit's holding that subsections one and two contain different, distinct elements. See McCarrick, 294 F.3d at 1290. Reading subsection one as setting forth a broad way in which bank fraud can be committed, and reading subsection two as incorporating the elements of subsection one but requiring the additional element of misrepresentation, would either render subsection one surplusage or change "or" to "and." It cannot be the case that subsection one is a

9

lesser-included offense of subsection two, as both subsections have the same statutory penalty. 18 U.S.C. § 1344.

The Court also holds that intent to harm a financial institution and exposing a financial institution to an actual or potential risk of loss are not required under section 1344(2). The Eleventh Circuit's statement in Linville that "[m]oney under the custody or control of a bank is not necessarily money whose loss the bank is responsible for," 228 F.3d at 1332, is as relevant in this context as it is in the sentencing guidelines context; the same statutory language is at issue. The Court is also persuaded by the First Circuit's reasoning in Kenrick, in which that Circuit held that "intent to harm" is not required under either subsection. 221 F.3d at 27-29.

The Court is not persuaded by the legislative history on which the Third Circuit relied. That Circuit focused on statements in the legislative history indicating that the primary purpose of section 1344 was preserving the integrity of federally insured banks. Thomas, 315 F.3d at 197-200. This Court declines to rewrite the statute based on legislative history, especially when that history is somewhat ambiguous on the relevant issue, and the legislative history is not being invoked to clarify an ambiguous term. The Court therefore holds that neither intent to defraud a financial institution nor intent to harm or expose a financial institution to a potential risk of loss are required elements, which the Government must prove.

The Court, however, is not willing to accept the formulation urged by the Government and adopted by the Sixth Circuit. Merely requiring an intent to defraud someone and obtaining money from a financial institution wholly unconnected to the fraudulent scheme captures more conduct than the statute's text and structure allows. Rather, the Court believes that the approach taken by the First Circuit is correct: "the intent element of bank fraud under either subsection is an intent to deceive the bank in order to obtain from it money or other property." Kenrick, 221

F.3d at 29. This Court's holding, of course, only applies to the second subsection. That formulation is not required for the first subsection, which expressly requires intent to defraud a bank. Additionally, a conviction will only lie under the second subsection if the defendant employs one of the means of deception set forth in the statute: "false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344(2).

Requiring an intent to deceive a bank is consistent with the text of section 1344(2). That statute proscribes obtaining money or property "owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." That text is obviously concerned with deception and obtaining funds or property from a bank. Requiring an intent to deceive a bank also avoids the problem of surplusage, as intent to deceive is not necessarily as broad as intent to defraud, and subsection two contains elements not found in subsection one. The basic difference is that subsection one requires a financial institution to be the target of the defendant's fraudulent scheme or artifice, while the second subsection requires that the defendant intend to deceive a financial institution as part of a scheme or artifice to defraud someone or something other than a bank.

Additionally, the Eleventh Circuit has focused on the defendant's intent to deceive a bank into releasing funds in at least two section 1344(2) cases. See United States v. Falcone, 934 F.2d 1528, 1545 (11th. Cir. 1991) ("So long as a defendant, in order to cause a bank to take some action, makes a misrepresentation that a reasonable bank would consider important in deciding whether to act as the defendant wishes, and intends by this representation to deceive the bank in furtherance of the fraud, the misrepresentation is material . . . ."(internal quotation marks and citations omitted)); United States v. Swearingen, 858 F.2d 1555, 1558 (11th Cir. 1988) (holding that the defendant's misrepresentations were material because they were "intended to deceive the

11

[b]ank[] in the furtherance of fraud."). The Court therefore holds that intent to deceive a financial institution is required for a conviction to lie under section 1344(2).

The question now becomes whether the Government put forth evidence at trial showing that Rivera intended to deceive a financial institution. It clearly did. The Government produced ample testimony that Rivera signed Mr. Woolsey's name to checks written on his business accounts to herself and to cash without her employer's authorization. Rivera's employer authorized her to sign his name to checks for her salary and business expenses, but the jury found that she signed his name to fifty checks that did not fall within that authorization. Rivera negotiated those checks at various financial institutions. In doing so, she deceived those institutions into believing that the checks were signed and authorized by her employer. They were not. The Government also put forth evidence that Rivera received money from financial institutions through that deception. Sufficient evidence was therefore presented to show that Rivera intended to deceive a financial institution in order to obtain funds in the institution's custody. See Falcone, 934 F.2d at 1542.

It could also be said that Rivera deceived financial institutions into believing that her employer signed the checks that her employer did authorize. However, that conduct is not punishable as bank fraud because there was no intent to defraud when Rivera negotiated those checks. By contrast, the Government did produce evidence that Rivera intended to defraud her employer by writing the unauthorized checks: Rivera intended to obtain money from her employer to which she was not entitled, and falsified her employer's business records in an attempt to conceal her scheme. She did so by recording the checks as business expenses, or reimbursement for business expenses, when in fact she was simply writing checks to herself or to cash and pocketing the funds.

The Government also produced enough evidence from which a reasonable jury could find that the other elements of section 1334(2) were satisfied. First, the Government presented more than sufficient evidence at trial to prove beyond a reasonable doubt that Rivera obtained money under the custody of a federally insured financial institution. The Government introduced into evidence copies of the actual checks from Mr. Woolsey's Coastal Bank of Georgia account that were made payable to Rivera and either cashed or deposited by Rivera at her bank. The Government also introduced the testimony of Joanne Joubert, the Executive Vice President of Coastal Bank, who testified that the checks introduced into evidence by the Government were, in fact, Coastal Bank of Georgia checks from Mr. Woolsey's account made payable to Rivera. Ms. Joubert also testified that the checks were endorsed by Rivera and that after these checks were negotiated, the money to cover these checks was transferred from Mr. Woolsey's Coastal Bank of Georgia account. The Government also introduced into evidence, through Ms. Joubert, a certified copy of Coastal Bank of Georgia's FDIC certificate.

Ms. Vanessa Bennett, the manager at Navy Federal Credit Union in St. Marys, Georgia, where Rivera was an account holder, testified that each of these checks were either deposited or cashed by Rivera at Navy Federal. Ms. Bennett also testified that the funds to cover these checks were transferred from Mr. Woolsey's account at the Costal Bank of Georgia. The Government also introduced into evidence, through Ms. Bennett, bank statements from Rivera's account at Navy Federal. Numerous entries included in Rivera's Navy Federal bank statements correspond with checks from Mr. Woolsey's Coastal Bank of Georgia account that were deposited into Rivera's Navy Federal account.

The Government also presented sufficient evidence showing that Rivera obtained this money by means of false or fraudulent pretenses or representations. Mr. Woolsey testified that

he did not sign, authorize, or endorse the checks in question, and that Rivera went beyond the scope of her authority and forged his signature on them. The materiality of that representation is obvious. A reasonable bank would certainly be influenced to release funds by a representation that the account holder signed and authorized a check.

Finally, the jury was presented with sufficient evidence to support a finding that Rivera acted knowingly. The jury could reasonably infer from the evidence described above that Rivera knew Mr. Woolsey did not authorize or sign the checks. Additional evidence of this element is the testimony regarding Rivera's attempt to conceal her scheme by recording the checks at issue as business-related expenses. Accordingly, sufficient evidence was presented at trial to support the jury's verdict finding Rivera guilty of committing fifty counts of bank fraud. Rivera's Motion for Acquittal is therefore **DENIED**.

## CONCLUSION

Rivera's Motion for a Judgment of Acquittal is **DENIED**. The jury's verdict finding her guilty beyond a reasonable doubt of fifty counts of bank fraud, in violation of 18 U.S.C. 1344(2), is affirmed.

**SO ORDERED**, this 12th day of January, 2010.

HONORABLE LISA GODBEY WOOD
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA